The next case on for argument is United States v. Tab. Good morning. Good morning, and may it please the court. I'm Richard Signorelli, and I am the attorney for defendant appellate Zimian Tab. I also represented Mr. Tab in all the proceedings in the district court. I've been his lawyer for more than three years now. And I'd like to thank the court for continuing my appointment to represent my client. Thank you for doing that. I'd like to first, with the court's permission, address the controlled substance offense point, followed by the crime of violence point. Mr. Tab should not be classified as a career offender because under the guidelines, he does not have any qualifying predicate convictions. First, with regard to the drug conviction. As I will address in a moment, there is no actual binding precedent in this circuit that restricts this panel's freedom from following the persuasive decisions and the recent decisions from the 4th, 6th, 7th, 10th, and D.C. circuits that Tab's prior drug conviction does not qualify as a controlled substance offense for purposes of applying the career offender provision for two independent reasons. First, the commentary conflicts with the text. The text of the guideline in this case is clear, unambiguous, and complete. It requires no explanation, no supplementation, no addition, no interpretation from the commentary. The text contains a comprehensive list of offenses which qualify as a controlled substance offense. None of these include inchoate offenses such as conspiracy. And the specific language used in the guidelines specifically excludes any unstated offenses. For example, the use of the term — Let me ask you, again, a very simple question. Yes, Judge. If you're right, prevail on this point, do you win, period, you don't have to go on? We do, Your Honor, because — I'm trying to count up the offenses here. He's only — it was found by the district court and as supported by the government's arguments below to have two predicate convictions. And you don't even need to reach the crime of violence. That's what I'm asking, yes. And so the specific language used, including the use of the term means, and not using words such as including, relating to, involving, indicates that it's a complete list. The commentary is not necessary at all to explain the text under the Stinson standard. And the Supreme Court's recent decision in Kaiser, I respectfully believe, is very instructive and relevant here because Kaiser has reaffirmed the principle that where the guideline or the regulation, which it speaks of, is clear, that you don't go to the commentary or to the underlying history in order to figure out what the guideline is supposed to say. On the commentary issue, this Court should follow the authoritative decisions set forth very recently by the Havis-Enbank decision in the Sixth Circuit and also by Winstead as well from the D.C. Circuit, not to mention the other authorities cited. In Jackson, we held that the commission had, quote, authority to expand the definition of controlled substance offense to include aiding, abetting, conspiring, and attempting to commit such offenses. The so why aren't we why isn't that dispositive of the first prong of your argument? Three reasons, Your Honor. First, the opinion expressly states that the only issue they're deciding, and this was 1995, in the earliest years of guideline jurisprudence, is the statutory authority issue, can the sentencing commission add offenses such as inchoate offenses to the guidelines. They were the opinion the Court never addressed the constitutional issues that are in play here, nor did the parties ever argue it. And indeed, defense counsel in that case appears to have conceded those types of issues and conceded the guidelines themselves. And the opinion so states. Number two, as far as Jackson not applying here, whatever force. Let me just pursue that a little bit. So supposing a Second Circuit panel holds in my hypothetical, this statute means such and such. And then a new case comes up and the argument is, well, the lawyers never presented our new argument to the panel that decided that first decision. Therefore, you, a different panel, have the power to overrule the first panel because they never were presented with a particular argument. That can't be right. Well, it's as much art as science, actually. It really depends on the particular circumstances and the parameters of what was argued in the first case and what's at stake in the second case. And there is decisional law, including Brecht and a couple of other cases that I cite in our submissions, that hold that where a prior panel was not confronted directly or confronted enough with an important issue such as this, with everything with so much at stake, that another panel may have the freedom to deal with that a different argument has been presented. So it really does depend on the circumstances. I would respectfully contend that the circumstances here are such that the Jackson decision was not confronted with these very important issues. Going back to Mistretta, because these issues were simply not argued to that panel. The panel didn't have the benefit of these arguments. And given what's at stake, the years of liberty and so forth, and the constitutional issues, going back to Mistretta back in 1989 and the separation of powers issues. The question then, though, is you may be entirely right, but would that not still require us something we can do, but require us to overrule the previous because it hadn't been argued and it's time to argue it rather than to ignore it? Well, and that's where Kaiser comes in. Because whatever limited force Jackson has, arguably, from the government's point of view, Kaiser specifically addresses this issue. And this case, I believe, came down in June of this year. And because in this case, Stinson, the Stinson analysis doesn't even have to come into play. You've got a clear guideline, which has been submitted to Congress for review and comment by statute, and that guideline is clear and unambiguous and complete for the reasons that I've stated and as detailed in the briefs. And Kaiser says you don't look beyond that, beyond that statute, to the underlying  And frankly, there's one other reason, if I may, Your Honor, just one final reason why Jackson does not have to be followed here, and that's the generic conspiracy point. This is a point that is wholly a first impression in this circuit. And there may be other pending cases, as the government notes in its brief, but it's never been adjudicated whatsoever. It is a separate issue completely, more science than art, as far as a generic conspiracy precedent is concerned. And on that generic conspiracy point, if I may, because this is so important, we've got the recent decisions coming out of the Tenth Circuit, Martinez-Cruz and other Tenth Circuit decisions which have reaffirmed that. Then you've got the Fourth Circuit coming down as recently as this summer with the Norman precedent and the other precedents that I cite. And these cases stand for a proposition that Jackson was never confronted with at all, and that is Section 846 of Title 21 does not require an overt act. The generic conspiracy definition clearly does. You have had 40 out of 54. I've been wrestling with that, having a number of us here probably have prosecuted 846 conspiracies and maybe defended against them. I was wrestling with what the proof of that, of 846, looks like. And I won't bore you with hearkening back to my own experiences in charging 846 conspiracies, but I don't see how you have one that doesn't involve something more than two folks sitting on a park bench thinking great thoughts about bringing heroin from New York City up to Rutland, Vermont. What the statute says. And regardless of the practices that many of us here are familiar with, with regard to 846, which are often charged with 841 crimes, the fact of the matter is 846 requires no overt act. You can prosecute that case. Hot crime. Based on agreement. Hot crime. It's actually. Doesn't the issue come up, for example, when on appeal there's an issue about whether there was sufficient proof of a particular overt act, and the government says it doesn't matter because under this statute we don't need to prove an overt act, ergo we win. So it does come up. It actually does. And it comes up in cases, I mean, this is in the trenches now of district court practice, where you've got U.S. v. White, a case that this decision heard that I handled as an assistant U.S. attorney, where there was an acquittal on all the substantive counts and a conviction on the conspiracy count, and a 10-year sentence was affirmed. So this comes up in real life. There is a difference. But the categorical approach, which applies for the reasons that I set forth in our rather lengthy submissions, looks to the elements. And the fact of the matter is there's a disconnect that the Tenth Circuit, the Fourth Circuit, and probably more circuits to come, and hopefully the Second Circuit, between the generic definition of the crime and the generic definition of conspiracy contrary to the government's efforts at saying otherwise clearly requires an overt act. You've got the vast majority of states and territories. You've got the model penal code, except for the narrow exceptions they cite. You have Black's Law Dictionary. And you've got, perhaps most importantly of all, the general conspiracy statute. And what's going on here is the same thing that happens in the crime of violence situation. There's this mismatch of elements that is clear as day. And that is why the Tenth Circuit and the Fourth Circuit have reached the conclusions they've reached, because 846 encompasses more conduct than the generic conspiracy definition equivalent. And because of that, pursuant to the Taylor categorical analysis, it takes in too much. It doesn't qualify. And a categorical approach, generic conspiracy definition, is important here for two reasons. First, the Sentencing Commission never defines the inchoate offenses. They just throw them out there, attempt aiding and abetting and conspiracy. So as Martínez-Cruz held, it's ripe for a generic definition. Number two, the second reason, look at the array of State and Federal offenses that these inchoate crimes apply to. They don't just apply to Federal narcotics conspiracy or Federal crimes or Federal drug crimes. They relate to all the State and Federal crimes in all jurisdictions, and not just drugs, but also violence. This is why Martínez-Cruz and the Norman were correct in holding that the generic conspiracy pursuant to the categorical approach is the only way to go here pursuant to Taylor and its requirements. Thank you, Mr. Signorelli. Okay. Thank you. Mr. Shinn. Good morning. May it please the Court. Juan Shinn for the United States. I'd like to address first the Havis-Winstead argument raised by counsel. So the question, Your Honor, about whether Jackson controls this case, I think all one needs to do is read what Jackson said. And so the relevant portion is what? Well, Jackson doesn't control, does it? His second, his argument about that conspiracy doesn't, this kind of conspiracy is not covered by the guideline. That's right, Your Honor. The Overt Act argument wasn't addressed in Jackson. Right, right. So it's only the first of his arguments that Jackson, in your view, controls. Yes. And the reason it controls, Your Honor, is that what Jackson was doing in addressing the challenge raised in that case is it was applying the Stinson standard. And so Stinson, of course, says that commentary is binding so long as it does not violate a statute, it is not inconsistent with the guideline, and it is not a plainly unreasonable reading. And so what Jackson did in the course of that opinion is it began with, well, what does this commentary actually say? And so it affirmed, Your Honor, the commentary, which it acknowledged broadened or expanded the definition of a controlled substance offense, and it said that that was not plainly unreasonable and it was not inconsistent with the guideline text itself. So it began with that proposition. And that was an essential part of its reasoning. It then moved on to whether it was properly promulgated under the relevant statutory provisions of 18 U.S.C. 994. But that's the guideline, not the promulgation of the commentary, but the promulgation of the guideline provision. Exactly, Your Honor. And so it was actually addressing whether the commentary itself was authorized under the statutory provision 994A and U. And so ultimately what the court held was that the commentary is not inconsistent with the guideline, is not a plainly unreasonable reading of the guideline, and does not violate a statute. And so it controls the first argument that they make. Now, if I could address the Kisor argument, because the government hasn't had an So this is important, Your Honor. Kisor was actually a pretty narrow decision. Kisor simply addressed whether to overrule Auer and Seminole Rock deference. And then it went on to reaffirm what prior cases had stated were the limits of Auer or Seminole Rock deference. But the court should begin with Stinson itself. Stinson itself does not require ambiguity in a guideline before treating the commentary as binding and authoritative. So Stinson said that commentary is binding because, one, there's a guideline that actually says that. So Guideline 1B.1.7 says that the failure to follow commentary that interprets a guideline or explains how it's to be applied can constitute a guidelines error for purposes of appellate review. It also relied on a prior Supreme Court case, which analogously said that policy statements are binding and authoritative. So what Stinson was doing, it began with a proposition that commentary is binding under the guidelines themselves. The guidelines say that commentary is binding. Stinson then looked to Seminole Rock deference as an analogy. It specifically says, we're just using this as an analogy. And it then borrows the standard of Seminole Rock deference, which, again, is the as long as it's not inconsistent with or plainly unreasonable. But then this is the key. The court explicitly says that commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice. And so it says that the standard that it borrowed from Seminole Rock deference applies even for unambiguous guidelines. So there's no, Kisor doesn't modify that. Kisor does not say anywhere that Stinson is overruled or abrogated in any way. And so this court has previously, in light of Stinson, relying on the language that I read, specifically said that there is no threshold test of ambiguity before relying on commentary. So Kisor does not modify Jackson in any way. And so we've addressed that length in our papers. Why it is that Stinson, under Stinson and Jackson, even if this court were to treat Jackson as not controlling, even if this court were to take a fresh view of how Stinson would apply, Application Note 1 would be authoritative and binding. And that's because it's not. I want to hear what you say, though, on the fallback argument. So Application Note says that the controlled substance offenses under 4B1.2 include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. And historically, of course, conspiracy involved an overt act. It wasn't a pure, inchoate crime. But you say that, nevertheless, Congress included within that category this very unusual conspiracy that is a, at least potentially, a purely inchoate crime. Why should we assume that was their determination or the Sentencing Guideline Commission's the Sentencing Commission's intention? Your Honor, if I could respectfully disagree with how, with one premise of your question. So I believe Your Honor. Two or three, if you like. I believe Your Honor stated that it's long been the case that an overt act was required so that this is not essentially purely an inchoate crime. Actually, what the Supreme Court has said in cases like Shabani and Whitfield is that the traditional common law rule is that there is no overt act requirement. It has long been the case under the common law, and the Court in Shabani and Whitfield, it cited cases from the 19th century. It has long been the case that no overt act was required. What makes a conspiracy an offense, it's not purely a thought crime, as I believe there was some discussion earlier. It's the agreement. The agreement is the act, and so it is not a thought crime. The agreement is the actus reus. That's what Shabani and Whitfield say. And so it has long been the case that an overt act was not required. That is the default rule. And the Supreme Court has said, look, Congress, if you want an overt act, just say so. Model it after 371. However, if you do not say overt act in those terms, no overt act is required. That is the default rule. It's essentially a clear statement rule for Congress. And so with that as the background, what you have here in Application Note 1, you have the commission saying controlled substance offenses and crimes of violence include, among other offenses, conspiring, conspiracy. So, again, the commission is acting against the same background law that Congress does. When the commission says conspiring without mention of any overt act requirement under the Supreme Court cases of Shabani and Whitfield, the rule is there is no overt act. And so that was all well settled at the time that the Sentencing Reform Act was enacted, at the time that the guidelines were enacted. It's been the law for over a century, as the Supreme Court has recognized. And so what we have here is a situation where this Court should decline to reflexively apply what's supposedly a generic definition. The only reason that Taylor applied a generic definition is because the Court there found specific legislative intent for a generic definition. And here, especially given the background presumption that there is no overt act, there is nothing in any statute, in any of the sentencing statutes or in any of the statutes that an overt act should apply to a conspiracy under Application Note I. And given that background, we would submit that you can't overcome that presumption simply because a majority of States require an overt act. First of all, that approach, one, ignores the fact that a majority of Federal statutes do not require an overt act. It ignores the fact that a significant minority of States do not require an overt act. And I would point the Court to the Castleman case, where the Court rejected an approach simply because it would have been ineffectual in at least ten States. Here, approximately a third of the States have conspiracy statutes that do not require an overt act. In addition, purely relying on the majority of State statutes, it ignores the common law background. And remember here, the Court is interpreting a Federal guideline, and the suggestion that Congress and the Commission, in the context of a Federal sentencing guideline that defines a career offender. Sotomayor, when was Section 371 passed? That I do not know, Your Honor, but it certainly has been around for ---- Probably in the 19th century. I think it may well be even older than that under a prior version. So whatever may have been English common law, the Federal common law, all the way from virtually the beginning down to the creation of this drug statute, always required an overt act. So why shouldn't that be more what we should look at, to the extent we look at the Federal common law in this situation, why shouldn't we look at, in effect, Federal common law? Respectfully, Your Honor, that's because 371 explicitly includes an overt act requirement. Many other Federal conspiracy statutes do not, including the Sherman Act, including wire fraud and mail fraud conspiracy under Section 1349. Mail fraud, the substantive statute doesn't even require anything other than the sending of a mail that could be totally incidental to the scheme. So I'm not sure that that, you know, if you start with what is almost an inchoate substantive act, and then say when conspiracy is similarly, is totally inchoate, I'm not sure that bears particularly on this situation. Well, and what my very next breath was, Your Honor, is that in particular, the Federal narcotic statutes uniformly do not require an overt act. And that is the background against which Congress and the Commission were acting. And so it's important here to remember that the controlled substance offense definition and commentary, it applies to a controlled substance offense that's not only a prior conviction for purposes of the career offender guideline, but also the instant offense. So in other words, if in this very case, a defendant were convicted of an 846 drug conspiracy. And so there's no reason to believe that Congress and the Commission intended for a Federal narcotics conspiracy not to trigger a Federal controlled substance offense definition and not to trigger a Federal career offender guideline. What if Congress and the Commission intended to incorporate anything into the career offender definition and the controlled substance offense definition? There's no reason to believe that it wouldn't have intended to include a Federal narcotics conspiracy. And again, it was well settled at the time that the guideline and the commentary were promulgated. It was well settled that there was no overt act requirement for purposes of Federal narcotics conspiracy. And therefore, there's nothing in the text of the commentary that suggests that the... I'm sorry. I'm still thinking about the mail fraud statute because I always think about the mail fraud statute. The you're saying that a conspiracy under 371 to violate the mail fraud statute doesn't require an overt act? But if it's charged under 371, however, Your Honor, there's no need for mail fraud conspiracy to be charged under 371. There's an independent mail fraud conspiracy under 18 U.S.C. 1349, Your Honor, which covers mail fraud, wire fraud. All right. I got you. Yes, Your Honor. And so that's the point here. Drug conspiracies typically are not charged under 371 because there's an independent statute, 21 U.S.C. 846. And so in light of that background principle that the default rule is that there is no overt act, the fact that there's nothing in the text or anywhere in the history  Your Honor, we would respectfully submit that clearly a controlled substance offense under the guideline includes an 846 conspiracy. Now, I'd be anticipating that counsel might get into the crime of violence point in his rebuttal time. I'd be happy to address it on... I haven't reserved any rebuttal time, so we're done.  Thank you, Your Honor. The next case on for argument is Lin v. Shanghai Original. Oh, I'm sorry. I was reading my notes here, and I don't see them. If you did reserve it, yes, and we'll let Mr. Shin stand up after that. Sorry to get everybody excited. Not really, but... With regard to the crime of violence, we largely rely on our submissions, but specifically the Scharzenoski precedent, which per Judge Pooler's dissenting opinion in Villanueva, we respectfully believe is still binding precedent, along with Johnson 1, the 2010 decision. We do not believe, and again, we rest on our submissions, but we do not believe, for the reasons set forth in Judge Pooler's opinion, Castleman changes the equation. I now would like to address the overt act, the generic conspiracy issue, and the Taylor decision, I think, is very instructive here because they overruled the ancient definition of burglary because it was not consistent with the more modern definition. And I do respectfully disagree with the government's efforts at trying to persuade the panel that somehow the modern generic conspiracy definition does not include overt act because 371 is cited probably more than all those federal statutes combined. And if the commission wanted an 846 without an overt act to count, they could put it in the guideline itself and they could make it clear. And the government always has the option of charging any crime. Sotomayor, what do you do with the proposition that we're talking about controlled substances and there's a specific controlled substance conspiracy that has no overt act requirement? Nope. Don't we presume that the commission and Congress knows what the heck they're talking about? Well, not necessarily because of the various jurisdictions and statutes. Taylor instructs us that uniformity is very important here. But there's not uniformity in the conspiracy law. Well, there is. And specifically, I mean, in our specific example, Mr. Signorelli, is the controlled substances conspiracy provision under 846. The generic definition analysis, the categorical analysis, does not require that it would be 100%. But it is clear, as we detail in our brief, that the vast majority of jurisdictions and the vast majority of federal, even federal conspiracy crimes, because 371 is the most important one. We all know that. We know how frequently that's charged. And they would even have the option of charging that in a narcotics case if they wanted to. But it is clear that the overwhelming authorities indicate that the generic definition of a conspiracy offense must include an overt act. And I would respectfully refer the panel to the authoritative decisions coming out of the Tenth and the Fourth Circuit. May I just conclude, you know, to use a term that one of Your Honors mentioned, it would be nice to have these arguments in a moot court, but there's some real  Sotomayor. But I think, Judge, what Judge Hall is asking you is this. This guideline is not addressed to all the crimes of any kind that could ever be contemplated. It's a guideline directed at drug offenses. And for a long time now, the overt act requirement has not been a requirement of a conspiracy under drug offenses. And therefore, what reason there is, is there to believe that the sentencing commission or Congress, when they used the word conspiracies in the application note, weren't totally aware of that and didn't say, oh, but there's got to be an overt act. I would venture that the vast majority of applications of this career offender provision, other than the offense of conviction, the prior convictions, the vast majority include State criminal offenses, including conspiracy offenses. And that's where Taylor comes in and the importance of the categorical approach for uniform definitions, for some sort of to remove the ambiguity and to address the uncertainty of it all. And that's where Taylor comes in, in requiring a categorical approach, defining conspiracy pursuant to a generic definition and definitional analysis. And so it really does encompass more State jurisdictions and territorial jurisdictions than anything else when you look at the prior criminal history that comes into play through this definition. So I hope that addressed your question, Your Honor. The relief requested by Mr. Tabb here is actually quite limited. He wishes to be resentenced for his actual offense conduct, which was 3.7 grams of crack, no violence. His full criminal history can be accounted for if he's resentenced as a non-career offender. The sky will not fall if the career offender provision is somewhat limited to avoid, including Mr. Tabb, within its parameters for all the reasons we discuss here. The difference is astounding. Less than three years at the bottom of the lower non-career offender guideline range to as much as almost 16 years at the high end. Where is the sentencing, where is the uniformity that the commission was supposed to instill here? It's sentencing disparity at its highest level. And when you have someone in Mr. Tabb's situation determining whether to plead guilty or go to trial, at least a narrower range should give him some sort of an idea of what he is facing here. And this, of course, is, I hate to call it a fallback notion or an argument here, but the rule of lenity, which I've never argued before this Court. But I really do think it applies. It's not a last resort, but it's a backup. And it's an appropriate backup, just in case this panel disagrees with each and every one of Mr. Tabb's arguments, both on crime of violence and on narcotics. Because it should not be the case, as it so clearly is here, that where Mr. Tabb committed his drug crime determines whether he does three years in prison or as much as 10 or 15 years in prison. Yes, I know those are factors. But I don't think it should be as a substantial a factor as that. And that's where the rule of lenity comes in. And, you know, my favorite case on the rule on the crime of violence issue, Schwarzenoski, even speaks about the rule of lenity in the context of removal. And they say how devastating it is for an immigrant to be removed. I would say the same thing when it comes to the deprivation of someone's freedom for so many years. There should be more certainty, less ambiguity. That's where the backup rule of lenity argument comes in. And it's not a throwaway. It's a real backup argument here. I hope it's not needed. But it's there just in case you do need it. Thank you very much, Mr. Segura. Thank you. Anything you want to add? If I could, I'll be very brief, Your Honor. Just first to address the crime of violence point. Why don't we limit it to that? Yes, Your Honor. So the Singh v. Barr case that this court recently decided addresses the substantive statute here of attempted assault with a deadly weapon. And so that resolves whether the substantive offense is a crime of violence. This court, of course, has already recognized that attempted robberies of all degrees are violent felonies or crimes of violence. And those are in Pereira-Gomez and the Thrower cases. And just in terms of a sensible interpretation here, it would not be sensible to say that an attempted robbery in the third degree, which defense counsel all across the board have been saying for the last several years requires virtually no force and is practically a nonviolent crime. It would be incongruous to say an attempted robbery in the third degree is a crime of violence, but an attempted assault with a deadly weapon is not a crime of violence. And just lastly, on the point regarding lenity, the Ramirez case, which the government cited in its last supplemental submission, specifically holds that lenity is a rule of last resort and commentary is applied before you ever get to lenity. And so here, given the fact that the commentary resolves these interpretive issues, there's no need for this Court to address lenity. Thank you. Thank you both once again. Thank you very much. We'll reserve decision in this case. And we will now hear argument in Lin versus Shanghai original. That's right. That's okay. Don't worry.